IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LISA FINNEGAN,                       )
                                     )
                Plaintiff,            )
                                     )
        v.                           )       1:16CV1012
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social        )
Security,[1]                         )
                                     )
                Defendant.            )


              **MEMORANDUM OPINION AND RECOMMENDATION**
                 **OF UNITED STATES MAGISTRATE JUDGE**

   Plaintiff, Lisa Finnegan, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 15, 17; see also Docket Entry 16 (Plaintiff's Memorandum); Docket Entry 18 (Defendant's Memorandum); Docket Entry 19 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of September 1, 2008. (Tr. 239-46.) Upon denial of those applications initially (Tr. 76-97, 136-46) and on reconsideration (Tr. 98-125, 153-70), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 171-76). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-61.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 15-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 4-9, 14, 352-57), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] met the insured status requirements of the [] Act through December 31, 2012.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: asthma and obesity.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

5.  . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [Plaintiff] can occasionally climb and balance. She can tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. [Plaintiff] requires portable oxygen during work hours.

. . .

6.  [Plaintiff] is capable of performing past relevant work as a sales clerk, circulation clerk, and general clerk. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.

7.  [Plaintiff] has not been under a disability, as defined in the [] Act, from September 1, 2008, through the date of this decision.

(Tr. 20-26 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignment of Error

In Plaintiff's sole issue on review, she contends that "[t]he ALJ fail[ed] to observe the guidance in [Social Security Ruling 00-4p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p")] which directs her to inquire about conflicts between the VE's testimony and the [Dictionary of Occupational Titles ("DOT")]; to identify apparent conflicts; and to resolve any apparent conflicts before relying on VE testimony." (Docket Entry 16 at 11 (citing Pearson v. Colvin, 810 F.3d 204, 210-11 (4th Cir. 2015)).) In particular, Plaintiff argues that (1) "the ALJ never ask[ed] the VE about conflicts [with the DOT] after propounding the final hypothetical containing . . . 'the need to have portable [oxygen] . . . in use during the work day'" (id. at 13 (quoting Tr. 59)); (2) the ALJ failed to identify the apparent conflict between the VE's testimony that the jobs he cited would accommodate Plaintiff's use of portable oxygen and the DOT's near silence on the matter (see id. at 16-26);[6] and (3) the VE's testimony that "there's

---

[6] Plaintiff contends that the DOT "arguably makes some provision for [oxygen] in 'other environmental conditions, [which] may include, but are not limited to, . . . [oxygen] deprivation.'" (Docket Entry 16 at 18 & n.7 (quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App'x D, ¶ 14 (U.S. Dep't of Labor 1993) ("SCO")).) However, placing the phrase "oxygen deprivation" in its full context makes clear that the SCO's "Other Environmental Conditions" reflects a job condition that could potentially subject an individual to oxygen deprivation, and does not indicate whether a particular job would accommodate portable oxygen. The full description reads: "diving in ocean and being subjected to bends and other conditions associated with high

(continued...)

8

nothing inherently significant about the actual presence of a portable oxygen device that would impair the functioning of an individual to perform these jobs" insufficiently resolved the apparent conflict (see id. at 26-29; see also Tr. 59). Plaintiff's argument ultimately fails as a matter of law.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. . . . [A]s part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant an "obvious" one).

---

[6] (...continued)
water pressure and oxygen deprivation." SCO, App'x D, ¶ 14.

9

In this case, the ALJ first queried the VE whether an individual with Plaintiff's age, education, and vocational history, and who could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk six hours, sit six hours, occasionally climb and balance, and tolerate only occasional exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation and hazards, could perform any past relevant work or any other jobs existing in significant numbers in the national economy. (See Tr. 58.) In response, the VE opined that such an individual would remain capable of performing past relevant work as a sales clerk, general clerk, and circulation clerk as generally performed, as well as the jobs of cashier, remnant sorter, and electronics worker. (See id.) The VE then provided the corresponding DOT codes for the latter three jobs, as well as their incidence in the national economy. (See Tr. 58-59.) The ALJ thereafter asked the VE: "And is your response consistent with the [DOT]?" (Tr. 59), to which the VE responded: "Yes, your honor" (id.).

At this point, the ALJ supplemented the first hypothetical question with "the need to have portable oxygen . . . in use during the work day" and asked about the impact of that requirement on the available jobs. (Id.) The following exchange occurred:

> VE: Your honor, there's nothing inherently significant about the actual presence of a portable oxygen device that would impair the functioning of an individual to perform these jobs.

10

> ALJ: So sales clerk, circulation clerk, general clerk, cashier, remnant sorter and electronics worker, none of those are counter indicated to have the presence of oxygen?
>
> VE: No.
>
> ALJ: Okay. And therefore all those jobs could be performed . . . when using portable oxygen?
>
> VE: Yes.

(Id.) Following that exchange, Plaintiff's attorney asked the VE how many days an individual could miss per month and still maintain employment. (Tr. 60.) In response, the VE testified that "[a]n individual who would miss two or more days person month . . . would not be tolerated." (Id.) After Plaintiff's counsel confirmed that she did not have any further questions, the ALJ closed the hearing. (Id.) The ALJ did not ask the VE, following his response to the ALJ's second hypothetical, whether his testimony harmonized with the DOT. (See Tr. 59-60.)

The ALJ subsequently issued a decision finding Plaintiff not disabled (see Tr. 15-26), which adopted the VE's testimony both as to Plaintiff's ability to perform her past relevant work and other available jobs:

> The [VE] testified that [Plaintiff] has the following past relevant work: sales clerk ([DOT]# 290.477-014) light work, SVP 3; circulation clerk ([DOT]# 209.362-010) sedentary work, SVP 3; and general clerk ([DOT]# 209.562-010) light work, SVP 3. In comparing [Plaintiff's] [RFC] with the physical and mental demands of this work, the [ALJ] finds that [Plaintiff] is able to perform it as generally performed. <u>The [VE] testified that the evidence provided did not conflict with the information contained in the [DOT]</u>.

11

> . . .
>
> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: cashier ([DOT]# 211.462-0100 SVP 2, with approximately 3K jobs in NC and 150K nationwide; remnant sorter ([DOT]# 789.687-146) SVP 2, with approximately 800 jobs in NC and 50K nationwide; and electronics worker ([DOT]# 726.687-010) with approximately 2K jobs in NC and 100K nationwide.
>
> <u>Pursuant to SSR 00-4p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT]</u>.

(Tr. 24-25 (emphasis added) (internal citation omitted).)

Here, the ALJ did not fully discharge her duty under SSR 00-4p. Although the ALJ inquired of the VE after the <u>first hypothetical question</u> whether any conflicts existed between his testimony and the <u>DOT</u>, and the VE testified that no such conflicts existed, the ALJ failed to ask the question again after the VE's response to the <u>second, dispositive hypothetical</u> which included the additional limitation regarding Plaintiff's use of portable oxygen while at work. (<u>See</u> Tr. 59.) However, the ALJ's error in that regard remains harmless for two reasons. <u>See generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

12

First, Plaintiff has not shown "where the [VE's] testimony seem[ed] to, but d[id] not necessarily, conflict with the [DOT]," Pearson, 810 F.3d at 209. Plaintiff insists that a VE's testimony automatically conflicts with the DOT whenever the DOT does not contain information about a limitation the VE testified the available jobs can accommodate. (See Docket Entry 16 at 16, 19, 24-25, 26; see also Docket Entry 19 at 1-2.)[7] However, this extreme position contradicts Pearson's holding:

> We recognize that [our holding] rejects . . . [the claimant's] contention that all possible conflicts must be identified and resolved. . . . [The claimant's] view would require the ALJ to do more than simply compare the express language of the [DOT] and the [VE's] testimony,

---

[7] Many of the cases specifically relied on by Plaintiff do not support his argument that the DOT's silence regarding a particular limitation automatically creates a conflict with the VE's citation of jobs accommodating that limitation (see Docket Entry 16 at 19, 20, 21, 23), because those cases actually reflect a direct conflict between the DOT and the VE's testimony, see, e.g., Fogle v. Colvin, No. 3:16-CV-32-FDW-DSC, 2016 WL 7322789, at *4 (W.D.N.C. Dec. 15, 2016) (unpublished) ("[T]he [DOT] is not silent. The definition of light work includes "a good deal of walking or standing," and the jobs identified are all catalogued in the [DOT] as "light work." The descriptions of the jobs identified by the [VE] could require standing and/or walking in excess of four hours per day, and the ALJ did not obtain an explanation for this conflict." (emphasis added) (citation omitted)); Bridges v. Colvin, No. 3:14-CV-540-RJC, 2016 WL 854425, at *4 (W.D.N.C. Mar. 4, 2016) (unpublished) ("The VE was given a hypothetical that limited [the] [p]laintiff to 'no more than superficial interpersonal contact with others' and required her to 'avoid concentrated exposure to dust, fumes and gases.' However, the VE testified that [the] [p]laintiff could do the jobs of Laundry Attendant, Day Worker, and Hand Packager. These jobs, according to the [DOT], may require [the] [p]laintiff to provide assistance and instruction to customers; to dust furnishings, hallways, and lavatories; or to clean packaging containers in an environment with frequent exposure to atmospheric conditions. These job descriptions 'seem to' conflict with the ALJ's RFC finding and, consequently, the VE's testimony in response to the ALJ's hypothetical." (citations and footnotes omitted)); Taylor v. Astrue, No. 4:07-CV-160-FL, 2009 WL 50156, at * (E.D.N.C. Jan. 7, 2009) (unpublished) (reversing due to two direct conflicts between VE and DOT: "(1) the [DOT] assigns a specific vocational preparation ("SVP") time equivalent to 'semi-skilled' work to two of the three job categories identified as 'unskilled' work by the VE; and (2) the [DOT] classifies the general clerk position as light" rather than sedentary as the VE testified).

13

and would allow the claimant to nitpick an ALJ's or [VE's] word choice on appeal.

Pearson, 810 F.3d at 209 (emphasis added).

Pursuant to Pearson, an ALJ must identify "apparent" conflicts, but not "all possible" conflicts. Id.; see also Burns v. Barnhart, 312 F.3d 113, 128 (3d Cir. 2002) (noting that, because DOT does not address aptitude levels, DOT and VE testimony "w[ere] not necessarily inconsistent in this regard, so the duty on the part of the ALJ to inquire into conflicts did not arise"); Manley v. Colvin, No. ED CV 16-1179-E, 2016 WL 7191541, at *4 (C.D. Cal. Dec. 12, 2016) (unpublished) ("There is no obvious or apparent conflict between the [DOT] and a [VE's] testimony that a particular job can accommodate a sit/stand option. To hold otherwise would mean that [VEs] always create conflicts with the [DOT] whenever they mention any of the multitude of things about a job not expressly addressed in the [DOT]. . . . SSR 00-4p [does not] require the discernment of such omnipresent 'conflicts.'" (internal citation, quotation marks, and brackets omitted)); but see Edmond v. Colvin, No. 8:12-cv-1081-RMG-JDA, 2013 WL 4647516, at * (D.S.C. July 29, 2013) (unpublished) (holding that, because "a job's stress levels are not identified in the [DOT], . . . the VE's testimony regarding any job under the [] hypothetical[] which incorporated the stress level limitation, would be inconsistent with the [DOT]" (emphasis added)). Simply put, the mere silence of the DOT on a

14

matter does not create, per se, an apparent conflict between the VE's testimony and the DOT.[8]

Although no apparent conflict arises based solely on the fact that the DOT does not address the use of portable oxygen at work, such a conflict could nevertheless exist between the VE's testimony and the DOT. In some cases, an apparent conflict may arise because the DOT's description of the applicable jobs' duties (although not expressly addressing a condition or circumstance) will appear to conflict with the VE's testimony. Pearson exemplifies that scenario. In that case, "[t]he ALJ found [the claimant's] nondominant arm could only occasionally reach upward," but for all three jobs cited by the VE, "the [DOT] lists *frequent* reaching as a requirement." Pearson, 810 F.3d at 210 (emphasis in original). The court observed: "Although the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly *may* require such reaching." Id. at 211 (emphasis in original). The court found the ALJ had

---

[8] According to Plaintiff, if "courts generally adopted the rule that, when the [DOT] is silent as to a limitation, there cannot be a conflict[,] . . . where most nonexertional limitations are concerned, ALJs would never have to observe SSR 00-4p's requirements and the ruling would be eviscerated." (Docket Entry 16 at 23.) This "straw-man" argument does not entitle Plaintiff to relief. In other words, rejecting Plaintiff's position that silence on the part of the DOT always equals apparent conflict with VE testimony does not require the Court to adopt the view that such silence never creates an apparent conflict. Rather, in each case, the Court must determine whether the circumstances reflect that the VE's testimony "seems to . . . conflict with the [DOT]." Pearson, 810 F.3d at 209.

15

failed to resolve the apparent conflict and remanded the case. Id. at 211-12.

Moreover, Plaintiff has made no attempt to demonstrate that the DOT's specific descriptions of the duties and working environments of her past relevant work or the three other jobs cited by the VE conflict in any way with Plaintiff's need to use a portable oxygen device while working. (See Docket Entry 16 at 16-26.) The Court need not undertake that exercise itself. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief ."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.") Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) (Dixon, M.J.) ("[A]s [the plaintiff] failed to develop these arguments in his Brief, the court will not address them.").

Under these circumstances, the ALJ's failure to specifically ask the VE whether his testimony in response to the second hypothetical harmonized with the DOT remains harmless error. See

Critchley v. Colvin, No. 5:15-CV-08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016) (unpublished), recommendation adopted, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (unpublished) (finding ALJ's failure to question VE about potential conflicts harmless where "no conflict, actual or apparent," existed).

Second, even if an apparent conflict existed, the VE here resolved it by unequivocally testifying that, in his expert opinion, the presence of a portable oxygen device would not have any impact on the jobs in question. (See Tr. 59.) Plaintiff nevertheless attacks the VE's testimony as insufficient:

> [T]he record only contains the VE's unsupported statements that [Plaintiff] would perform all of the six jobs in the record, even while using portable [oxygen]. . . . But <u>the VE never stated, as the transcript demonstrates, whether his testimony was based on the DOT or, rather, on the VE's training and expertise</u>, which failure is also contrary to SSR 00-4p.

(Docket Entry 16 at 27 & n.11 (emphasis added).) Thus, Plaintiff essentially argues that prejudicial error occurred when the VE, testifying in his capacity as an expert, failed to expressly state that his testimony relied on his own expertise.[9]

Cases cited by Plaintiff (see Docket Entry 16 at 18-19, 23) disagree with that assertion:

> [The] [p]laintiff argues that the VE's testimony conflicts with the [DOT], which does not specifically indicate whether oxygen may be utilized at the designated job sites. [The] [p]laintiff, thus, argues the VE's

---

[9] Notably, Plaintiff had the opportunity to question the VE regarding the basis for his opinion that the use of a portable oxygen device would not impact the jobs in question on cross-examination and chose not to do so. (See Tr. 59-60.)

17

> response that [the] plaintiff would be able to use supplemental oxygen, if required, while working as an information clerk or call-out operator, does not constitute substantial evidence. [SSR] 00–4p requires the VE's testimony to be consistent with the [DOT]. The [DOT], however, is not the only source of valid information or the single most definitive authority covering every relevant job requirement. Rather, <u>the VE's testimony was substantial evidence properly used to supplement expertise about whether oxygen tanks were consistent with the type of work permitted by [the] plaintiff's RFC, as the [DOT] only offers generic descriptions and allows for clarification from experts when there is no direct conflict</u>. Indeed, [VEs] . . . are specialists in employment and related factors whose testimony often constitutes substantial evidence upon which the ALJ can rely, as occurred in this case.

Edwards v. Colvin, No. 4:12CV01977AGF/DDN, 2013 WL 4666344, at *12 (E.D. Mo. Aug. 30, 2013) (unpublished) (citations omitted) (emphasis added); see also Buckley v. Commissioner of Soc. Sec. Admin., No. 1:14-CV-00124-TLW, 2015 WL 3536622, at *23 (D.S.C. June 4, 2015) (unpublished) (Chief Judge adopting recommendation of Magistrate Judge) ("[The] [p]laintiff argues that the ALJ failed to resolve an apparent conflict because of the [DOT's] silence with regard to non-exertional limitations in the assessed RFC. The [United States Magistrate Judge] is unpersuaded by this argument . . . . [T]he ALJ performed his duties under SSR 00–4p and relied upon the testimony of the VE who is, <u>by definition</u>, an expert with respect to occupational definitions and requirements." (emphasis added)).

Accordingly, Plaintiff has not shown reversible error with respect to the ALJ's reliance on (and adoption of) the VE's

18

testimony as to Plaintiff's ability to perform her past relevant work and three other available jobs, notwithstanding her need to use a portable oxygen device.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 15) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 19, 2017